IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERALD GEORGE, *et al.* | )<br>)<br>) |
| Plaintiffs, | )<br>) No. 07 C 1713 |
| vs. | )<br>) Magistrate Judge Schenkier |
| KRAFT FOODS GLOBAL, INC., *et al.* | )<br>) |
| Defendants. | )<br>) |
| – AND – | )<br>) |
| GEORGE PIRO, *et al.* | )<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) No. 07 C 1954 |
| KRAFT FOODS GLOBAL, INC, *et al.* | )<br>) Magistrate Judge Schenkier |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, individually and as representatives of a putative class, have filed this action against Kraft Foods Global, Inc, Kraft Foods Global Inc. Administrative Committee, Benefits Investment Committee, and Jim Dollive, Karen May, Marc Firestone, and Pamela King, in their capacities as members of the Benefits Investment Committee, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiffs allege that in managing a 401(k) retirement plan ("the Plan"), defendants paid service providers excessive and unreasonable fees and expenses, which were not incurred solely for the benefit of the Plan and its participants and which were not disclosed to the participants. Plaintiffs allege that in connection with these

payments, defendants breached their fiduciary duties to the Plan in various ways and seek relief pursuant to Sections 502(a)(2) and 502(a)(3) of ERISA. *See* 29 U.S.C. §§ 1132(a)(2), (a)(3). For their claim under Section 502(a)(2) (Count I), plaintiffs seek to have the defendants "restore to the Plan the losses it experienced as a direct result of the Defendants' breaches of fiduciary duty and [to hold the defendant] liable for any other available and appropriate equitable relief, including prospective injunctive relief and declaratory relief, and attorney's fees" (Compl. at ¶106). For their claim under Section 502(a)(3) (Count II), plaintiffs seek "an accounting of all transactions, disbursements and dispositions occurring in, in connection with, and/or in respect of, the Plan and its assets," and an award of injunctive and other appropriate equitable relief (Compl. at ¶¶ 117, 119). Plaintiffs seek a jury trial "of all counts so triable" (Compl. at Prayer for Relief).

Defendants have moved to strike the plaintiffs' demand for a jury trial, on the ground that neither Section 502(a)(2) nor Section 502(a)(3) grants a right to a jury trial, and that plaintiffs have no right to a jury trial under the Seventh Amendment (doc. # 95). For the reasons that follow, we agree, and grant the motion to strike.

**I.**

We begin our analysis with plaintiffs' principal argument: that they have a constitutional right to a jury trial on their ERISA claim under Section 502(a)(2). The Seventh Amendment to the United States Constitution provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ." This constitutional grant of the right to a jury trial extends beyond the specific common law causes of action recognized in 1791. *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564-65 (1990) (*citing Parsons v. Bedford*, 3 Pet. 433 (1830); *Tull v. United States*, 481 U.S. 412, 417 (1987);

*Beacon Theaters, Inc. v. Westover*, 359 U.S. 500 (1959)). The Seventh Amendment confers the right to a jury trial in suits "in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera v. Nordberg*, 492 U.S. 33, 41 (1989) (*citing Parsons v. Bedford*, 3 Pet. 433, 447 (1830)).

In *Granfinanciera,* the Supreme Court quoted the two-part test articulated in *Tull v. United States*, 481 U.S. 412 (1987), to determine if a cause of action involves legal rather than equitable rights: "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera,* 492 U.S. at 42 (quoting *Tull*, 481 U.S. at 417-18). *Granfinanciera* makes clear that the second part of the analysis, the nature of the remedy, is more important than the first. *Id.*

Plaintiffs do not address the first prong of the *Granfinanciera* test, and thus effectively concede that the first prong of that test weighs against their claim for a jury trial under Section 502(a)(2). Indeed, that concession is required by the uniform line of authority that "the Act's fiduciary responsibility provisions 'codif[y] and mak[e] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts.'" *Firestone Tire & Rubber Company v. Bruch*, 489 U.S. 101, 110 (1989) (quoting H.R. Rep. No. 93-533) (internal citations omitted) (alterations in original); *see also McDougall v. Pioneer Ranch Ltd. Partnership*, 494 F.3d 571, 576 (7th Cir. 2007) ("'ERISA's antecedents are equitable' not legal") (quoting *Matthews v. Sears Pension Plan*, 144 F.3d 461, 468 (7th Cir. 1998)).

Plaintiffs base their constitutional argument on the proposition that the remedy they seek under Section 502(a)(2) is legal in nature, and that they therefore satisfy the second (and more important) factor under the *Granfinanciera* test. For the reasons that follow, we disagree.

### A.

In their claim under Section 502(a)(2), plaintiffs seek an order requiring defendants to "restore to the Plan the losses it experienced as a direct result of the Defendants' breaches of fiduciary duty and [to hold defendants] liable for any other available and appropriate equitable relief, including prospective injunctive relief and declaratory relief, and attorneys' fees" (Compl. at ¶ 106). Plaintiffs assert that their demand that plaintiffs "restore to the Plan the losses it experienced" is a request for a legal remedy, for which they have a constitutional right to a jury trial.

In making this argument, plaintiffs run head long into nearly 30 years of Seventh Circuit authority holding that there is no right to a jury trial under ERISA. Many of the Seventh Circuit cases make this holding in the context of claims under 502(a)(1)(B) of ERISA. *See, e.g., Patton v. MFS/SON Life Financial Distributions, Inc.*, 480 F.3d 478, 484 (7th Cir. 2007); *Wardell v. Central States, Southeast and Southwest Area Pensions Fund*, 627 F.2d 820, 829-30 (7th Cir. 1980), *Matthews v. Sears Pension Plan*, 144 F.3d 461, 468 (7th Cir. 1998). However, at least one Seventh Circuit decision held that damages, "the traditional form of relief offered in the courts of law," *Chauffeurs, Teamsters and Helpers, Local 391 v. Terry*, 494 U.S. 558, 570 (1990), are not available under Section 502(a)(2), *Plummet v. Fluid Pump Service, Inc.*, 124 F.3d 849, 863 (7th Cir. 1997), which would eliminate any constitutional right to a jury trial under Section 502(a)(2) as well. Following this appeals court authority, all courts within the Seventh Circuit likewise have held that claims under Section 502 (a)(2) are legal claims, for which there is no right to a jury trial. *See, e.g.,*

*Abbott v. Lockheed Martin Corp.*, No. 06-701, 2007 U.S. Dist. LEXIS 58930, *7-8 (S.D. Ill., Aug. 13, 2007); *Spano v. The Boeing Co.*, No. 06-743, 2007 U.S. Dist. LEXIS 28774, *30-36, 38-39 (S.D. Ill., Apr. 17, 2007); *Benjamin v. Marshall P. Morris, Ltd. Profitsharing Plan and Trust*, No. 97 C 6714, 1998 U.S. Dist. LEXIS 8358, *17 (N.D. Ill., May 20, 1998). This line of authority, without more, would be fatal to plaintiffs' claim for a jury on their Section 502(a)(2) claim.

## B.

But, plaintiffs claim that there is more. Plaintiffs argue that the decision in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), employs an analysis that requires us to conclude that plaintiffs' Section 502(a)(2) claim is a legal one for which they have a right to a jury. In order to assess that argument, we begin with a discussion of the *Great-West* decision.

*Great-West* involved a provision in an ERISA plan that required beneficiaries to reimburse the plan for monies advanced for medical expenses if they later recovered money from a third party. Knudson, a plan beneficiary, was injured in a car accident, and Great-West Life & Annuity Insurance Company covered her medical expenses on behalf of her husband's health and welfare plan. Knudson filed a tort suit against a third party, and recovered a sum of money in a settlement agreement. Great-West then filed an ERISA claim under Section 502(a)(3), seeking to compel Knudson to reimburse the plan by paying a portion of her settlement.

The Supreme Court held that Great-West could not seek relief under Section 502(a)(3), which only allows for equitable relief, whereas the relief Great-West sought – while couched as an injunction to compel Knudson to make a payment – was legal. 534 U.S. at 210-11. The Court explained that "the imposition of personal liability on respondents for a contractual obligation to pay money," *id.* at 221, was relief that was typically "not available in equity." *Id.* at 211. Since Section

5

502(a)(3) of ERISA permits only equitable relief, *id.* at 209-10, Great-West's action was not authorized by that section. *Id.* at 221.

In the course of its analysis, the Supreme Court rejected Great-West's argument that its claim was permissible under Section 502(a)(3) because it sought equitable restitution. 534 U.S. at 212. The Supreme Court explained that restitution can be either a legal or an equitable remedy. Restitution is a legal remedy when a plaintiff seeks "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money," as in a breach of contract. *Id.* 213. By contrast, restitution is an equitable remedy "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.

Plaintiffs argue that, because they are seeking to impose personal liability on the defendant under Section 502(a)(2), under the *Great-West* analysis the relief they seek is legal restitution and they therefore are entitled to a jury trial. For several reasons, we find that plaintiff's reliance on *Great-West* is misplaced.

*First*, we disagree that the *Great-West* analysis of the distinction between legal and equitable restitution advances plaintiff's claim here for a jury trial. In our judgment, plaintiff places too much weight on the Supreme Court's statement that restitution is considered legal when a plaintiff seeks to obtain a judgment imposing personal liability on a defendant to pay money, and too little on the accompanying portion of the analysis observing that "[s]uch claims were viewed essentially as actions at law for breach of contract. . . ." *Great-West*, 534 U.S. at 213. That was the factual

6

situation in *Great-West*: the insurance company was seeking to enforce the indemnity clause of a contract requiring Knudson to reimburse the plan for monies the plan had advanced. Great-West's claim for recovery was not premised on Knudson having breached any fiduciary duty to the plan, but rather on an alleged breach of her contractual obligation. In this case, we have the converse situation: plaintiffs do not seek to hold defendants personally liable pursuant to a contract, but instead because of their roles as fiduciaries (*see* Compl. ¶ 106 (alleging that defendants "are liable to restore to the Plan the loses it experienced as a direct result of Defendants' breaches of fiduciary duty . . .")). This distinction is important, because historically courts have considered a claim for breach of fiduciary duty to be a matter for courts of equity. *See, e.g., Abbott*, 2007 U.S. Dist. LEXIS 58930, *6; *Donovan v. Robbins*, 579 F. Supp. 817, 821 (N.D. Ill. 1984). The *Great-West* analysis does not suggest (much less hold) that a claim for restitution by a plan fiduciary for breach of fiduciary duty is a legal rather than equitable claim.

*Second*, the relationship between Section 502(a)(2) and Section 1109(a) of ERISA further underscores the equitable nature of the relief plaintiff seeks. Section 502(a) allows a participant, beneficiary or fiduciary to bring an action "for appropriate relief under Section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109(a), in turn, provides that a fiduciary who breaches any of the responsibilities placed upon fiduciaries "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate, . . ." 29 U.S.C. § 1109(a). "Losses to the plan" may result from a breach of fiduciary duty that involves fiduciaries personally profiting from misconduct (which is not alleged here), or where malfeasance or nonfeasance by the fiduciary results in losses to the plan that wind up in the hands of others (such as, alleged here, service providers).

In *Great-West*, the Supreme Court reiterated its earlier holding that "'an action for a restitution against the transferee of tainted Plan assets' is 'appropriate equitable relief,'" and that a beneficiary may "'maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of) . . . .'" 534 U.S. at 215 (quoting *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250-51, 253 (2000)). Thus, in our case, if plaintiffs sued the service providers to whom the fiduciaries allegedly paid excessive amounts, that would be an equitable claim. What Section 502(a)(2) allows is for a participant to have a means of restoring the money or property to the plan by holding the fiduciary responsible, without having to sue the transferee. We are not persuaded that a suit against the fiduciary who allegedly made the excessive payment is a claim for legal relief, when the claim against the recipient of those payments to recover the money would be equitable. We see nothing in the *Great-West* analysis that requires that result.

*Third*, further evidence that claims under Section 1109(a) – and thus under Section 502(a)(2) – are equitable, and not legal, is found in the fact that beneficiaries who file suit to hold fiduciaries personally liable under Section 1109(a) are not entitled to monetary recovery themselves, but may only seek a recovery that inures to the benefit of the Plan as a whole. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985). This point has been cited as a basis for concluding that "legal relief is not available under Section 1109." *Grodsky v. Benefit Trust Life Ins.*, No. 89 C 463, 1990 U.S. Dist. LEXIS 2324, *7 (N.D. Ill. Mar. 5, 1990). At a minimum, the Supreme Court's interpretation of Section 1109(a) in *Massachusetts Mutual Life* creates further distance between a claim under Section 502(a)(2), and the kind of suit to enforce contractual obligations that provided the context for the Supreme Court's discussion of restitution in *Great-West*.

*Fourth*, in a related vein, we note that the *Great-West* decision involved a claim under Section 502(a)(3), and did not involve or discuss claims under Section 502(a)(2). In light of the foregoing analysis, we are unwilling to presume that the Supreme Court in *Great-West* intended, *sub silentio*, to overturn the many appeals court decisions holding that there is no right to a jury trial under Section 502(a). We are especially reluctant to do so in light of the fact that since *Great-West*, the Seventh Circuit twice has stated (albeit without citation to *Great-West*, and in cases involving provisions other than Section 502(a)(2)) that there is no jury trial right for ERISA claims. *McDougall v. Pioneer Ranch Ltd. Partnership*, 494 F.3d 571, 576 (7th Cir. 2007) ("[t]he general rule in ERISA cases is that there is no right to a jury trial"); *Patton v. MFS/SON Life Financial Distributions, Inc.*, 480 F.3d 478, 484 (7th Cir. 2007) (in ERISA cases, "the plaintiff has no right to a jury trial"). District court decisions within this Circuit likewise have declined to read *Great-West* as authorizing the right to a jury trial in Section 502(a) claims. *See Jetseck v. Prudential Ins. Co. of America*, No. 07 C 3753, Slip. Op. at 5 (N.D. Ill. Nov. 15, 2007) (Section 502(a)(1)(B) claim); *Abbott*, 2007 U.S. Dist. LEXIS 58930, *6 (Section 502(a)(2) claim); *Spano*, 2007 U.S. Dist. LEXIS 28774, *33-37 (Section 502(a)(2) claim). We have considered the authorities cited by plaintiff, including *Bona v. Barasch*, No. 01 Civ. 2289, 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003), a post *Great-West* decision that extended a right to jury trial in a Section 502(a)(2) case, but we do not find them persuasive.

Thus, for the foregoing reasons, we hold that under the *Granfinanciera* test, plaintiffs' claim under Section 502(a)(2) is an equitable one for which there is no constitutional right to a jury trial.[1]

## II.

Even if a right to a jury trial is not guaranteed by the Seventh Amendment, one may be extended by Congress if it chooses to do so under a particular statutory scheme. However, ERISA does not contain any language that expressly confers a right to a jury trial.

Nonetheless, plaintiff argues (in passing) that in enacting ERISA, Congress implicitly conferred the right to a jury trial under Section 503(a)(2) – but not Section 503(a)(3) – because Congress authorized legal relief under that section (Pls.' Opp. at 13). For the reasons explained above, we reject the proposition that Section 502(a)(2) authorizes a plaintiff to seek legal relief, as well as the proposition that the particular relief plaintiffs seek here is legal.

Moreover, plaintiffs' suggestion that Congress implicitly intended to confer the right to jury trial is at odds with Supreme Court's observation that ERISA is a "comprehensive and reticulated" statute. *Nochman Corp. v. Pension Benefit Guarantee Corp.*, 446 U.S. 359, 361 (1980); *see also Massachusetts Mut. Life*, 473 U.S. at 146 ("[t]he assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme"). In *Massachusetts Mutual Life*, the Supreme Court pointed to the care and detail that went into the drafting of ERISA in rejecting plaintiff's contention that Section 1109(a) creates an implied right of action for claims by beneficiaries to seek damages that would go to the

---

[1]Plaintiffs offer no argument or authority that they have a constitutional right to a jury trial under Section 503(a)(3). Indeed, they would be hard pressed to do so in light of well-settled Supreme Court authority holding that relief available under Section 502(a)(3) is limited to "those categories of relief that were *typically* available in equity . . . ." *Bruns v. Hewitt Associates*, 508 U.S. 248, 256 (1993) (italics in original). This proposition was reaffirmed in *Great-West*, the lead authority that plaintiffs advance in support of their claim to a jury trial under Section 503(a)(2). 534 U.S. at 210.

10

beneficiary (instead of to the plan). The Supreme Court observed that "[t]he six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Massachusetts Mut. Life*, 473 U.S. at 146 (emphasis in original).

Any attempt to engraft the right to jury trial onto Section 502(a)(2) as a matter of statutory grant is further undermined by the legislative history of Section 502(a)(2). While under an early version of Section 1109(a) (which Section 502(a)(2) allows a participant to enforce) provided expressly for "legal or equitable" relief, the final bill that was passed omitted any reference to legal relief. *See Massachusetts Mut. Life*, 473 U.S. at 145-46 and n.14. The Seventh Circuit has recognized that congressional silence on the right to a jury trial in ERISA reflects an intent that claims brought under the statute be equitable in nature. *Brown v. Retirement Committee of the Briggs & Stratton Retirement Plan*, 797 F.2d 521, 527 (7th Cir. 1986). The fact that the express reference to legal relief originally contained in Section 1109(a) fell to the cutting room floor before the statute was passed is even more damaging to plaintiffs' statutory jury trial claim, as it suggests that Congress in fact was not silent on whether Section 1109(a) would include legal claims, but purposefully declined to include those claims under the statute.

Accordingly, we hold that Section 502(a)(2) does not implicitly provide a statutory grant of a right to jury trial for plaintiffs' claim here.

## CONCLUSION

For the foregoing reasons, the motion to strike the plaintiffs' jury demand (doc. # 95) is granted.[2]

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: March 20, 2008**

---

[2]Plaintiffs make an alternative request asking the Court to empanel an advisory jury (Pls.' Opp. at 14-15). The Court denies this motion without prejudice; we consider it premature to determine at this time whether to empanel an advisory jury for trial. Plaintiff's may renew this request closer to the trial date.